IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYN C.,[1]                                                    No. 6:21-cv-01421-HZ

                Plaintiff,                                  OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

Laurie B. Mapes
PO Box 1241
Scappoose OR 97056

Luke Moen-Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Justin Lane Martin
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Lyn C. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on April 29, 2015, alleging an onset date of November 14, 2014. Tr. 148.1.[2]  Plaintiff's date last insured ("DLI") is December 31, 2019. Tr. 307, 595. Her application was denied initially and on reconsideration. Tr. 57–82. Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 96. After a hearing, the ALJ issued a decision dated October 30, 2017 that Plaintiff was not disabled. Tr. 11–28. The Appeals Council denied review and Plaintiff appealed to this Court. Tr. 1-6, 697–703. Plaintiff also filed a new application for benefits dated October 22, 2018, in which Plaintiff alleged a disability onset date of October 30, 2017, the date of the ALJ's decision. Tr. 822–29.

---

[2] Citations to "Tr." refer to the pages indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

This Court reversed the ALJ's October 30, 2017 decision and remanded Plaintiff's claim to the Commissioner for further proceedings. Tr. 710–30. The Appeals Council ordered the ALJ to consolidate Plaintiff's 2015 and 2018 applications and issue a new decision. Tr. 733. Plaintiff asked the ALJ to use the original alleged disability onset date of November 14, 2014 for the consolidated claims. Tr. 830. On April 5, 2021, Plaintiff appeared with counsel for another hearing before an ALJ. Tr. 617. On June 2, 2021, the ALJ found Plaintiff not disabled. Tr. 608.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on fibromyalgia, chronic fatigue syndrome, migraine headaches, depression, anxiety, osteoarthritis, and low back injury. Tr. 192, 250. At the time of the her alleged onset date, she was 49 years old. Tr. 246. She has at least a high school education and past relevant work experience as a registered nurse. Tr. 606.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."

*Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

disabled. *Id.*

  In step three, the Commissioner determines whether the claimant's impairments, singly

or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

  In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after her alleged onset date through her date last insured. Tr. 597. Next, at steps two and

three, the ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia and

degenerative disc disease." Tr. 597. However, the ALJ determined that Plaintiff's impairments

did not meet or medically equal the severity of a listed impairment. Tr. 598. At step four, the

ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> the claimant can stand and walk four hours in an eight-hour day, and sit for seven hours in an eight-hour day. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can tolerate occasional exposure to extreme environmental heat and cold, and to workplace hazards such as unprotected heights and exposed, moving machinery.

Tr. 598. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 606. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier II, office helper, and small products assembler I. Tr. 602. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 603.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly rejecting her subjective symptom testimony; (2) rejecting the medical opinions of Plaintiff's primary care doctor, Martin Hurtado, M.D., and relying on the opinion of Allan D. Duby, M.D.; and (3) discounting the lay opinion of her husband, Steve T.

## I.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that she stopped work due to migraines, mobility issues, and chronic fatigue. Tr. 645. She reported that though her symptoms wax and wane, in the two months prior to the hearing she spent six out of seven days in bed. Tr. 646. Upon inquiry from the ALJ, she clarified that in December 2019, her symptoms were not as severe but that she spent "a lot of time" laying down in one way or another. Tr. 651–52. Plaintiff testified that she drives once a week and stays local. Tr. 640. Her husband does the household chores. Tr. 640. She testified to memory issues and difficulty with word finding. Tr. 647. She reported that she does not sleep well, which exacerbates her fatigue and "mental issues." Tr. 648.

When asked what treatments she had tried for her fibromyalgia besides medications, Plaintiff reported that she had changed her diet. Tr. 650. She noted that pain prevents her from engaging in regular exercise. Tr. 650–651. When asked why she had not sought treatment from a rheumatologist for her fibromyalgia, she stated that she did not believe a rheumatologist could

provide her any treatment that she was not already receiving and wanted consistency in care from her primary care doctor. Tr. 648–649.

### A.    Fibromyalgia

Plaintiff contends the ALJ erred by discounting her testimony about her fibromyalgia. The ALJ found fibromyalgia to be a severe impairment but discounted her "statements concerning the intensity, persistence and limiting effects" of her alleged symptoms. Tr. 599. In drawing this conclusion, the ALJ relied on conservative treatment, improvement with treatment, and a lack of objective medical evidence.

In discounting Plaintiff's symptom testimony, the ALJ relied on what he characterized as routine and conservative treatment. Tr. 602. He found that "while she was regularly prescribed medications, the record contains no evidence that she requested or was referred for other conservative measures, such as physical therapy, pool therapy, massage, acupuncture, or use of a TENS unit." *Id.* He noted further that "the record contains no evidence that she sought emergency department treatment for breakthrough pain or episodic fibromyalgia pain" or "requested or received referrals for specialized treatment in the areas of pain management or rheumatology." *Id.*

An ALJ may rely on a plaintiff's use of conservative treatment to discount subjective symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Here, conservative treatment was not a clear and convincing reason supported by substantial evidence. Over the relevant period, Plaintiff was prescribed several medications, including multiple opioid and non-opioid pain relievers. *See e.g.*, tr. 538, 542, 560, 972–973, 989, 1002, 1004. She received trigger point injections for her neck pain and migraines.

Tr. 984. When her doctor recommended dietary changes, Plaintiff attempted changes to her diet. Tr. 1001–1002.

In 2019 she was referred to physical therapy for her neck pain and sought physical therapy treatment in January 2020. Tr. 911, 936. A couple months later, Plaintiff experienced a "fibro flare"; her primary care doctor considered whether physical therapy had precipitated the flare. Tr. 966.

The ALJ also relied on Plaintiff's failure to seek other treatment modalities. There is no evidence in the record, however, that Plaintiff was counseled by her doctors to seek alternative or more aggressive treatments for her fibromyalgia. And though it was prior to the relevant period, Plaintiff was evaluated by a specialist at Oregon Health & Science University's ("OHSU") fibromyalgia clinic in November 2012. Tr. 1115. These records were considered and reviewed by Plaintiff's primary care doctor when she established care with him. Tr. 497–498.

Substantial evidence does not support the conclusion that the treatment sought and prescribed to Plaintiff was conservative. The treatment Plaintiff received is similar to the treatment found not to be conservative by the Ninth Circuit in *Revels*. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding steroid and epidural injections and prescription medications not to be conservative treatment).

In discussing Plaintiff's fibromyalgia, the ALJ found that Plaintiff's symptoms were controlled with medication. Tr. 597, 599–602. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted).

In its prior decision, the Court found the ALJ erred by relying on this same rationale because Plaintiff suffered from "significant pain on a near-constant basis despite her medications." Tr. 718. Subsequent records continue to support this finding.

In October 2017, April 2018, and July 2018, Plaintiff rated her pain level related to fibromyalgia as a four or five out of ten and remained on a daily opioid with varied use of a stronger opioid. Tr. 1004, 998, 993. In December 2018, Plaintiff reported having a fibromyalgia flare once a month. Tr. 986. She remained on a opioid medication regimen and reported that another medication no longer helped. *Id.* She noted persistent neck pain that was not improving. *Id.*

In March 2019, Plaintiff reported frequent fibromyalgia flares and believed that the main opioid she took was becoming less effective. Tr. 983. At a September 2019 visit, when describing her pain related to her fibromyalgia Dr. Hurtado wrote "her pain level is stable" and noted that she continued to take the same opioid pain reliever daily. Tr. 975.

In November 2019, Plaintiff was treated for neck and shoulder pain that was not due to a specific injury. Tr. 972. At the time, Plaintiff was "unsure if she was experiencing a fibromyalgia flare." *Id.* She continued to take several prescription medications and increased her opioid use due to migraines. *Id.* At a December 2019 visit, when describing her pain related to her fibromyalgia Dr. Hurtado wrote "her pain level is stable" and noted that she continued to take an opioid pain reliever daily. Tr. 969.

The record shows that Plaintiff consistently reported pain related to her fibromyalgia despite being on daily and rescue prescription pain relievers. Though her primary care doctor described her pain level as "stable," as the Court previously noted, her pain appears constant across the multi-year record. It may be "stable" but it is not significantly improved in a way that

contradicts her testimony. Substantial evidence does not support the conclusion that Plaintiff's fibromyalgia improved and was reasonably controlled with treatment.

The ALJ also found that the medical evidence did not support Plaintiff's allegations. Tr. 599–602. The ALJ particularly highlighted the lack of documentation of fibromyalgia tender points. Tr. 599. He noted "[no] treating or examining clinician described her as exhibiting any positive fibromyalgia tender points or chronic disturbances of strength, sensation, reflexes, range of motion, mood, affect, sensorium, interpersonal functioning, grooming or hygiene that would be objective evidence of an individual being in chronic, disabling pain." Tr. 602. This finding is not supported by substantial evidence.

As Plaintiff points out, she was seen by a rheumatologist in 2012 who documented eighteen out of eighteen tender points. These records were before the ALJ at the time of the decision. Moreover, it should not be held against Plaintiff that her primary care doctor failed to conduct regular tender point testing. *See The Merck Manual of Diagnosis and Therapy,* online version for Health Care Professionals, Fibromyalgia, available at https://www.merckmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/bursa,-muscle,-and-tendon-disorders/fibromyalgia (last accessed Jun. 14, 2022) (noting that the criteria that required "the presence of tenderness at some of 18 specified tender points" has been "eliminated because nonspecialists sometimes have difficulty evaluating tenderness consistently, the tender points may fluctuate in intensity, and it was thought advantageous to have criteria that are entirely symptom-based.") As for the remaining signs the ALJ found lacking, fibromyalgia is a disease "diagnosed entirely on the basis of a patient's reports of pain or other symptoms." *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir. 2004). A patient who has impairments due to fibromyalgia may have "muscle strength, sensory functions, and reflexes

[that] are normal." *Revels v. Berryhill*, 874 F.3d 648, 663 (9ᵗʰ Cir. 2017) (internal quotations and citations omitted). Objective findings on physical exam are not necessary to determine the extent of impairment due to fibromyalgia. *Id.* The ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about her fibromyalgia symptoms.

 **B.** **Migraines**

  Plaintiff contends the ALJ erred by failing to give a legally sufficient reason for rejecting Plaintiff's reports of her migraine symptoms. Defendant did not respond to any of Plaintiff's arguments related her migraines.

  The ALJ discussed Plaintiff's migraine symptoms and treatment at Step Two and found her migraines to be a non-severe impairment. After reviewing her recent chart notes related to her migraines he found as follows:

> When viewed as a whole, the undersigned finds the record shows that while the claimant experienced migraines throughout the period considered by this decision, according to her self-reports they improved with the use of abortive medication and were not so frequent or individually duration [sic] to cause more than minimal vocational limitations.

Tr. 597.

  The RFC formulation must take into account all of a claimant's medically determinable impairments ("MDIs"), both severe and non-severe. §§ 404.1545(a)(2), 416.945(a)(2). *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). Here, the ALJ erred by failing to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony related to her migraines and thus failing to account for the impairment in the RFC.

  The ALJ accurately summarized the most recent chart notes related to Plaintiff's migraines but the conclusions he drew from those notes are not supported by substantial evidence. Tr. 597. From October 2017 to December 2019 the frequency of Plaintiff migraines

steadily increased from two to three migraines a month, to one to two migraines a week. Tr. 1004, 1001, 998, 986, 975, 969. The increased frequency in her migraines corresponds with a reported decrease in the effectiveness of her abortive medications. *Id.* In the earlier visits, Plaintiff reports that her abortive medications are effective but that her headache occasionally persisted. Tr. 986 (Dec. 2018), 983 (March 2019). By June 2019 she reports using a strong opioid medication for migraine pain one to two times per week. Tr. 978. Six months later, she reports one to two migraines per week and that the medication she previously used to relieve her migraines at onset had decreased in efficacy. Tr. 969. There is nothing in these chart notes that describes the individual duration of the migraines as the ALJ suggests. At the previous hearing though she testified that even with the use of rescue medication her migraines can affect her for two or more days. Tr. 38, 45.

The ALJ found that Plaintiff's migraines improved with medication and were not so frequent as to be disabling. This was error. Though abortive medications were somewhat effective, the most recent records show a pattern of increased frequency with less relief from medication.[3] Substantial evidence does not support the ALJ's conclusion regarding the frequency of Plaintiff's migraines. The ALJ erred by rejecting Plaintiff's symptom testimony related to her migraines.

//

//

//

---

[3] As a point of reference, Paragraph B of Listing 11.02, which is the appropriate listing for an equivalence analysis for migraines, requires migraines occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. This frequency is similar to what Plaintiff describes in her most recent primary care visits.

13 – OPINION & ORDER

## II.    Medical Evidence

Plaintiff contends the ALJ erred in rejecting the medical opinions of Plaintiff's primary care doctor, Martin Hurtado, M.D., and relying on the opinion of Allan D. Duby, M.D., a non-examining consultive physician.

### A.    Martin Hurtado, M.D.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Id.* (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

Dr. Hurtado issued 2016 and 2021 opinions that the ALJ rejected. As for the 2016 opinion, the Court's prior reasoning applies with equal force to the ALJ's recent decision. The Court considered Dr. Hurtado's 2016 opinion in its 2020 Opinion & Order. The Court found the ALJ did not err in rejecting the 2016 opinion. Tr.724–727. Here, the ALJ's reasoning for rejecting Dr. Hurtado's 2016 opinion is identical to the reasoning provided in the ALJ's prior opinion. Accordingly, the Court adopts its reasoning from the 2020 Opinion & Order and declines to revisit the issue.

In his 2021 opinion, Dr. Hurtado wrote that Plaintiff has "long-standing fibro and has seen Rheum." Tr. 1029. He stated "[s]he has the classic syndrome and has chronic fog and fatigue which impact her ability to function as a nurse." *Id.* He reported that Plaintiff has "daily symptoms." Tr. 1030. He found that pain would constantly interfere with her attention and concentration and that she was incapable of even "low stress" jobs. Tr. 1031. He opined that she could walk less than 50 feet without severe pain and without resting. *Id.* He found that she could not sit or stand for longer than 20 minutes. *Id.* He opined that she could never stoop or crouch. Tr. 1032 Finally, he found that Plaintiff was likely to miss work more than ten times a month. Tr. 1033.

The ALJ rejected Dr. Hurtado's 2021 opinion for several reasons. First, he found Dr. Hurtado failed to support his opinion with clinical evidence. Tr. 604–605. This is not a specific and legitimate reason supported by substantial evidence to reject the opinion. As discussed above, Plaintiff was seen by a rheumatologist who conducted tender point testing that Dr. Hurtado reviewed. Moreover, the criterion for diagnosing fibromyalgia is necessarily symptom-based. The ALJ also relied on conservative treatment. Tr. 604. As discussed in the section above on Plaintiff's symptom testimony, this rationale was not supported by substantial evidence.

Next, the ALJ found that the limitations that Plaintiff cannot walk more than 50 feet without being in severe pain and cannot stoop or crouch were contradicted by her activities of daily living. Tr. 605. This is a specific and legitimate reason supported by substantial evidence in the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion). As the ALJ notes, there is evidence in the record

that Plaintiff grocery shops, occasionally does dishes, does laundry, and cleans bathrooms. Tr. 268–270. This level of activity is at odds with the degree of limitation identified by Dr. Hurtado.

The ALJ also permissibly relied on a lack of objective evidence to support the stark increase in days likely to be missed from the 2016 to 2021 opinions. Tr. 605.  As discussed above, throughout this period Plaintiff's fibromyalgia pain remained constant without evidence of a stark increase in pain levels or more frequent flare ups. The frequency of her migraines increased but not to a degree that obviously supports this limitation. Without an explanation from Dr. Hurtado, the ALJ reasonably relied on a lack of objective evidence to support this finding. *See Molina*, 674 F.3d at 1111 (An ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."). Because the ALJ provided specific, legitimate reasons, supported by substantial evidence, the Court finds the ALJ did not err in discounting Dr. Hurtado's 2021 opinion.

### B.    Allan D. Duby, M.D.

Plaintiff contends the ALJ erred by relying on the testimony of Dr. Duby in formulating the RFC. Dr. Duby was a non-examining physician who testified during the 2021 hearing. Tr. 622–635. During his testimony, Dr. Duby doubted Plaintiff's fibromyalgia diagnosis, with a particular focus on the fact that she had never been seen by a rheumatologist and lacked testing to rule out other diseases, such as inflammatory arthritis. Tr. 626. He found that Plaintiff's impairments did not meet or equal the severity of a listed impairment. Tr. 626–27. He identified the following limitations: Plaintiff could lift/carry 10 pounds frequently and 11-20 pounds occasionally, sit for 2 hours at a time and 7 hours total in an 8-hour workday, stand for 1 hour at a time and 7 hours total in an 8-hour workday, and walk for 1 hour at a time and 4 hours total in an 8-hour workday. Tr. 627. She could reach frequently, push/pull, handle, finger, and feel with

both hands continuously, operate foot controls frequently, climb stairs/ramps frequently and climb ladders/scaffolds occasionally, balance and stoop frequently, kneel, crouch, and crawl occasionally, and work at unprotected heights on a frequent basis during the relevant period. Tr. 627–28.

The ALJ gave Dr. Duby's opinion "some persuasive value" and incorporated many of the "specific exertional, postural, and environmental limitations" identified by Dr. Duby in the RFC. Tr. 603. This was error because Dr. Duby drew these conclusions without the benefit of the complete record. At multiple points in his testimony, Dr. Duby noted the lack of a diagnosis from a rheumatologist, lack of tender point exams, and a lack of labs showing that other diseases had been ruled out by Plaintiff's doctors. Tr. 625–626, 629–630, 634. However, Dr. Duby did not review Plaintiff's OHSU records. As discussed at other points in the opinion, the OHSU rheumatology records show a diagnosis of fibromyalgia, a tender point exam documenting 18 out of 18 tender points, and lab work to rule out inflammatory arthritis. Tr. 1132, 1150–1152. Even though these records are from before the relevant period, they directly contradict many of Dr. Duby's statements and cast doubt on his understanding of the case and the reliability of his opined limitations.

### III.   Lay Witness Testimony

Plaintiff argues the ALJ impermissibly discounted the testimony of Plaintiff's husband Steve T. The ALJ may discount a lay witness's testimony by providing germane reasons supported by substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Plaintiff's husband provided Function Reports in 2015 and 2016. Tr. 259–66, 299–306.

The 2015 Function Report completed by Plaintiff's husband noted that Plaintiff has no

strength or energy and said that her fatigue is sometimes overwhelming. Tr. 259. He observed that Plaintiff spent about 70% of her time between her bed and the couch. Tr. 260. He indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands. Tr. 264. He stated that she could perform chores for twenty to thirty minutes at a time twice a day, four to five times per week. Tr. 261. Plaintiff's husband said that she is able to prepare snacks and simple meals, but she is unable to cook a full prepared meal. *Id*. He indicated that although Plaintiff used to be able to snow ski, water ski, backpack, and had helped her husband remodel two homes, she was no longer able to do any of those things. Tr. 260. He also noted that if she were to lift forty to fifty pounds one time, she would be down for two days due to her chronic fatigue and fibromyalgia. Tr. 261. He did not mention Plaintiff's migraine headaches in the 2015 function report.

Plaintiff's husband's 2016 Function Report documented similar challenges. He reported that she walks from room to room in the house and spends much of her time in bed or on the couch. Tr. 300. He noted that some days she does not get out of bed at all. *Id.* He also reported that Plaintiff has migraines that last for days, brain fog that causes forgetfulness, and that she is unable to sit or stand for any amount of time. Tr. 299. He reiterated that she was no longer able to ski, hike, travel with comfort, garden, hang sheet rock, cut firewood, or dance. Tr. 300. He reported that she was unable to stand for long periods and performed one chore every other day. Tr. 300–01. He again indicated that her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands. Tr. 304. He added that she also has difficulty with her memory, concentration, understanding, and following instructions, and said that she is unable to pay bills, handle a savings account, or use a checkbook because she cannot remember when to do it or if she has done it and struggles with organization

and memory. *Id.*; Tr. 302. He described behaviors of distraction, depression, and pain. Tr. 305. Plaintiff's husband also described the symptoms of her migraines, including headaches and vomiting that lasts for days. Tr. 299.

The ALJ rejected Steve T.'s opinion and found that "the objective medical evidence, the documented course of treatment, and the opinions of Dr. Duby and the DDS consultants to have greater persuasive value than the layperson allegations of the claimant's husband." Tr. 606.

As discussed in the sections above, the objective medical evidence, Plaintiff's treatment, and Dr. Duby's opinion are not germane reasons supported by substantial evidence. This leaves the opinions of the "DDS consultants." Tr. 606. Without more explanation, this alone is not a germane reason to reject lay witness testimony. To hold otherwise would not comport with Ninth Circuit authority that considers lay witness testimony valuable to social security benefits determinations. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account . . ."); *see also Charles P. v. Comm'r of Soc. Sec.*, No. C18-1618-MJP-BAT, 2019 WL 1981887, at *4 (W.D. Wash. Apr. 16, 2019), *report and recommendation adopted sub nom. Philippart v. Comm'r of Soc. Sec.*, No. C18-1618-MJP, 2019 WL 1979327 (W.D. Wash. May 3, 2019) (finding the same and rejecting the rationale that state agency reviewing doctors provided "a more comprehensive assessment" than a lay witness). Furthermore, "[l]ay witness testimony may not be rejected on the grounds that it lacks support from medical evidence, but it may be rejected if contradicted by medical or other evidence." *Kristin E. v. Comm'r of Soc. Sec.*, No. C19-6093-MLP, 2020 WL 4219673, at *2 (W.D. Wash. July 23, 2020) (citing *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) and *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the ALJ identified no contradiction between Steve T.'s opinions and the DDS consultants' opinions. The

ALJ failed to provide a germane reason for rejecting the lay witness opinion of Plaintiff's husband.

## IV.    Remand

Plaintiff asks the Court to credit the above-described testimony as true and remand this case for payment of benefits. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ALJ provided legally insufficient reasons for rejecting the evidence. The ALJ erred in his review of the subjective symptom testimony of both Plaintiff and lay witness, Steve T. and in his review of the medical evidence. Furthermore, the record in this case is fully developed. This is Plaintiff's second appeal to the District Court. There have been two hearings with testimony from vocational experts and a medical expert.

Defendant contends that "evidentiary conflicts" in the record preclude an award of benefits. Def. Brief at 16, ECF 9. Defendant does not develop this argument and cites to the same reasons the ALJ's gave for rejecting Plaintiff's subjective symptom testimony. The Court found that those reasons are not supported by substantial evidence. *See supra*. They thus do not demonstrate a conflict in the record. Defendant also points generally to the opinions of the non-

examining agency doctors. Without more argument or explanation from Defendant though, the Court cannot say that a third remand for further proceedings would shed any useful new light on this case. Defendant has not pointed to any specific evidence "that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled." *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

This is the rare instance where remand for an award of benefits is appropriate. At least one of the opinions relied on by the ALJ in determining Plaintiff's RFC was provided without the benefit of understanding that Plaintiff had been diagnosed with fibromyalgia by a specialist. More importantly, Plaintiff's testimony, if credited, would require a finding that she is disabled. Plaintiff testified that her pain and fatigue result in her spending a lot of time "down." Tr. 651–652. At the prior hearing she described being "down" as "either being on, on the couch or in the bed" and getting up only to meet her basic needs. Tr. 44. She also testified that when she gets a regular migraine, they take two or more days to resolve even when her rescue medications are effective. Tr. 38, 45. At her most recent primary care visits she reported getting one to two migraines a week. Tr. 978, 969. The vocational expert testified that a person who misses more than sixteen hours of work per month cannot maintain competitive employment. Tr. 667. When credited as true, Plaintiff's testimony establishes that her symptoms would cause her to miss sixteen hours or more of work per month. As such, crediting Plaintiff's testimony requires a finding that she is disabled.

//

//

//

//

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED:_____July 12, 2022_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge

22 – OPINION & ORDER